Case 5:12-cv-02086-tjs Filed 06/08/12 Page 1 of 2

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

Nu-Corp, LTD

8 Copthall, Roseau valley,

00152 Dominica 91311

Plaintiff,

vs.

DOES 1-9,

Defendants.

---

## JOHN DOE'S OMNIBUS MOTION TO SEVER DEFENDANTS AND/OR QUASH THE SUBPOENA AND/OR ISSUE A PROTECTIVE ORDER AND INCORPORATED MEMORANDUM OF LAW

Defendant, John Doe, files this Omnibus Motion and moves this Court to: (first) sever and dismiss the Defendants for improper joinder, and require that Plaintiff re-file the severed cases, if it chooses to do so, pursuant to Federal Rule of Civil Procedure 21; and/or (second) quash the subpoenas directed at EarthLink, Road Runner and Verizon Internet Services (hereinafter "the ISPs") and/or issue a protective order limiting the disclosures by the ISPs pending further review and argument pursuant to Federal Rules of Civil Procedure 26 and 45. This Court should grant the relief requested. In support, the Defendant relies on the following Memorandum of Law:

### I. ARGUMENT

Plaintiff is improperly utilizing this Court's procedures to extort settlements from individuals. Plaintiff, and other mass-copyright plaintiffs, harass potentially innocent individuals with threats of statutory damages and legal fees and embarrass them by naming them as defendants in actions for copyright infringement of explicit pornographic videos.

Courts addressing these pornographic movie infringement cases have expressed concern about such abusive settlement tactics. *See* e.g., *On the Cheap. LLC, Does 1-5011*, No. 10-4472-BZ, 2011 WL 4018258, at *11 (N.D. Cal. Sept. 6, 2011) (stating that settlement tactics result in the defendants being left with a "decision to either accept plaintiff's demand or incur significant expense to defend themselves" and such does not "comport with the 'principles of fundamental fairness'").

Specifically, Plaintiff has misjoinded 9 unrelated Defendants and has caused the issuance of a Subpoena prior to the rule 26(1) conference seeking protected information as to John Doe's identity and anonymous online activities, Also, this Court should sever and dismiss the Defendants for improper joinder, and require that Plaintiff re-file the severed cases, if it chooses to do so, pursuant to Federal Rule of Civil Procedure 21. In the alternative, this Court should quash the subpoenas directed at the ISPs and/or issue a protective order limiting the disclosures by the ISPs pending further review and argument pursuant to Federal Rules of Civil Procedure 26 and 45.

### A. Plaintiff's Joinder of 9 Unrelated Defendants in this Action is Improper

In its Complaint, Plaintiff improperly joined 9 unrelated individuals as Defendants to this lawsuit. Federal Rule of Civil Procedure 20(a)(2) provides, in relevant part, that defendants may only be joined in one action if:

> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

> (B) any question of law or fact common to all defendants will arise in the action.

"[T]he central purpose of Rule 20 is to promote trial convenience and expedite the resolution of disputes thereby eliminating unnecessary lawsuits." *Alexander v. Fulton Cnty, Ga.,* 207 F.3d 1303, 1323 (11th Cir. 2000). "Under the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers v. Gibbs,* 383 U.S. 715, 724, 866 86, S.Ct. 1130, 16 L.Ed.2d 218 (1966). "The Federal Rules, however, also recognize countervailing considerations to judicial economy." *Alexander,* 207 F.3d at 1324. A motion for joinder may be denied if it would result in "prejudice, expense or delay." 7 Charles Alan Wright, et. al., Federal Practice and Procedure § 1652, at 396 (3d ed. 2001). "The district court has broad discretion to join parties or not and that decision will not be overturned as long as it falls within the district court's range of choices." *Swan v. Ray,* 293 F.3d 1252, 1253 (11th Cir. 2002).

Numerous courts have found that alleged copyright infringement through the use of BitTorrent Protocol is insufficient to sustain permissive joinder, both in the Eleventh Circuit[s] and beyond.[2]

### 1. Plaintiff's Claims Do Not Arise Out of "the Same Transaction, occurrence, or Series of Transactions or Occurrences"

Plaintiff would like this Court to believe that the mere use of BitTorrent Protocol by the individual Defendants is sufficient to sustain their joinder in this action. However, an individual Defendant's alleged use of BitTorrent Protocol does not necessitate the inference that he or she

---

*See Raw Films, Inc. v. Does 1-32,* No. 1:11-CV-2939, slip op., 2011 WI., 6840590 (N.D. Ga. Dec. 29, 2011) (order severing defendants); *Patrick Collins, Inc. v. Does 1-35,* No_ 1:11-CV-02940 (N.D. Ga. Dec. 19, 2011) (order severing defendants); *K-Beech, Inc. v Does 1-63,* No. 1:11-CV-2941-CAP (N.D. Ga. Dec. 5, 2011) (order severing defendants); *Liberty Media Holdings, LLC v. BitTorrent Swarm,* --F.R.D.--, No. 1:11-CV-21567-KMM, 2011 WL 5190106 (S.D. Fla. Nov. 1, 2011) (severing defendants); *Liberty Media Holdings, LLC v. BitTorrent Swarm,* --F.D.R.--, No. 1:11-CV-21525-KMM, 2011 WL 5190048 (S.D. Fla. Nov 1, 2011) (severing defendants).

[2] *,See e.g., Third Degree Films v. Does 1-3577, No.* CI 1-02768 LB, slip op., 2011 WL 5374569 (N.D. Cal. Nov. 4, 2011); *Hard Drive Productions, Inc. v. Does 1-30,* No. 2:11-CV-345, slip op., 2011 WL 4915551 (ED. Va. Oct. 17, 2011) (severing defendants); *K-Beech, Inc. v. Does 1-78,* No. 5:11-CV-05060 (E.D. Penn. Oct. 3, 2011) (order severing defendants).

had any interaction with any of the other 58 Defendants in this case. As was noted in an analogous

case recently decided in the Southern District of Florida:

> Under the BitTorrent Protocol, it is not necessary that each of the Does ...
> participated in or contributed to the downloading of each other's copies of the work
> at issue - or even participated in or contributed to the downloading by any of the
> [other] Does .... Any "pieces" of the work copied or uploaded by any individual
> Doe may have gone to any other Doe or to any of the potentially thousands who
> participated in a given swarm. The bare fact that a Doe clicked on a command to
> participate in the BitTorrent Protocol does not mean that they were part of the
> downloading by unknown hundreds or thousands of individuals across the country
> or across the world.

*Liberty Media Holdings, LLC v. BitTorrent Swarm*, —F.R.D.—, No. 1 : 11-CV-21567-KMM,

2011 WL 5190106, at *2 (S.D. Fla. Nov. 1, 2011) (quoting *Hard Drive Prods., Inc. v. Does 1-*

*188,* — F.Supp.2d.—, No. C-11-01566, 2011 WL 3740473, at *13 (N.D. Cal. Aug. 23, 2011)).

District courts in the Eleventh Circuit and beyond have reasoned that John Doe defendants

in analogous lawsuits were improperly joined based the large time span between each defendant's

alleged sharing of the file. *Raw Films, Inc. v. Does 1-32,* No. 1:11-CV-2939-TWT, slip, op., 2011

WL 6840590, at *2 (N.D. Ga. Dec. 29, 2011) (time span of more than 4 months); *K-Beech, Inc. v.

Does 1-63,* No. 1:11-CV-02941-CAP, at 6 (N.D. Ga. Dec. 5, 2011) (time span of almost 3

months); *Liberty Media Holdings, LLC,* 2011 WL 5190106, at *3 (S.D. Fla. Nov. 1, 2011) (time

span of 2 months); *Liberty Media Holdings, LLC v. BitTorrent Swarm,*—F.R.D.—, No. 1:11-CV-

21525-KMM, 2011 WL 5190048, at *2-4 (S.D. Fla. Nov. 1, 2011) (time span of two months);

*Hard Drive Prods., Inc.,* 2011 WL 3740473, at *13 (time span of two weeks).

In *Raw Films, Inc.,* the court found that "[d]ownloading a work as part of a swarm does not

constitute 'acting in concert' with one another, particularly when the transactions happen over a

long period." 2011 WL 6840590, at *2; see also *K-Beech, Inc.,* No. 1:11-CV-02941-CAP, at 4

(N.D. Ga. Dec. 5, 2011) (order granting motion to sever). In explanation of that finding, the court

reasoned that:

> [t]he differing dates and times of each Defendant's alleged sharing do not allow for
> an inference that the Defendants were acting in concert. While the Defendants may
> have used the same peer-to-peer system, the Complaint does not allege that they
> were sharing with each other. For example, Doe 4, who is alleged to have been in
> the swarm on July 13, 2011, is unlikely to have been in the swarm at the same time
> as Doe 5, who is alleged to have been in the swarm on March 4, 2011.

*Id.* at *2; *see also K-Beech, Inc.,* No. 1:11-CV-02941-CAP, at 5-6 (N.D. Ga. Dec. 5, 2011).

In this case, Plaintiff's Complaint hollowly alleges that Defendants' alleged infringement

was part of the same series of transactions or occurrences. However, Exhibit A to the Complaint

shows that these transactions or occurrences happened throughout a time span of almost 8 weeks.

*(See* Compl. Ex. A.) Rather than admit that Defendants were not using BitTorrent Protocol at the

same, or even similar, times, Plaintiff instead focuses on its allegation that the Defendants were

sharing the same piece (as denoted by hash tag) of its copyrighted work. However, this allegation

does not warrant the implication that Defendants exchanged any piece of the relevant file with

each other or actually acted in concert with one another. *See e.g., MCGIP, LLC v. Does 1-149,*

No. C 11-02331 LB, slip op., 2011 WL 4352110, at *3 (N.D. Cal. Sept. 16, 2011) (finding

misjoinder where the plaintiff failed to show that any of the defendants actually exchanged any

piece of the seed file with one another); *Boy Racer, Inc. v. Does 1-60,* No. C 11-01738 SI, slip

op., 2011 WL 3652521, at *4 (N.D. Cal. Aug. 19, 2011) (finding misjoinder because "Plaintiff

[did] not plead facts showing that any particular defendant illegally shared plaintiff's work with

any other particular defendant"). Plaintiff's allegations that Defendants committed the same type

of violation in the same way simply does not equate to participation in the same transaction,

occurrence, or series of transaction or occurrence. *See LaFace Records, LLC v. Does 1-38,* No.

5:07-CV-298-BR, 2008 WL 544992, at *7 (E.D.N.C. Feb. 27, 2008). This basis alone is

sufficient to warrant the severance of the Defendants.

### 2. Joinder Will Prejudice the Defendants Moving Forward and Result in a Lack of Judicial Economy

"Among the factors to be considered by the court in exercising its discretion under Rule 21 are whether... judicial economy would be facilitated, whether prejudice would be avoided if severance were granted, and whether different witnesses and documentary proof are required for the separate claims." *Hartley v. Clark*, No. 3:09cv559/RV/EMT, 2010 WL 1187880, at *4 (N.D. Fla. Feb. 12, 2010); *see also*, 7 Charles Alan Wright, et al., Federal Practice and Procedure §1652, at 396 (3d ed. 2001) ("[T]he court has discretion to deny joinder if it determines that the addition of the party under Rule 20 will not foster the objective of the rule, but will result in prejudice, expense or delay").

Joinder of 9 unrelated Defendants in this case will result in severe practical problems moving forward. The Defendants, proceeding both *pro se* and through counsel, will likely assert different legal and factual defenses that apply to them particularly, or only a fraction of the 9 Defendants. Based on an individual Defendant's circumstances, he or she may be asserting legal defenses based on: copyright invalidity, de minimums copying, fair use, grant of permission or a license, copyright misuse, acquiescence, unclean hands, and/or estoppel. Further, the individual Defendants are likely to put forward a variety of factual defenses and will identify different witnesses. As one court noted in a similar case:

> Comcast subscriber John Doe 1 could be an innocent parent whose internet access was abused by her minor child, while John Doe 2 might share a computer with a roommate who infringed Plaintiffs' works.... Wholesale litigation of these claims is inappropriate, at least with respect to a vast majority (if not all) Defendants.

*BMG Music v. Does 1-203*, No. Civ. A 04-650, 2004 WL 953888, at *1 (E.D. Pa. Apr. 2, 2004). As the case proceeds, Plaintiff is likely to make further discovery requests against each individual Defendant that will further increase complexity and cost. This is the exact situation in

dismiss, any evidentiary support these items may lend to Plaintiff's Complaint upon information and belief IPP is actually an interested party in this litigation, rather than an independent witness as Plaintiff would have this court believe.

It is widely accepted that "it is improper for an expert to be compensated on a contingent fee basis." Michael H. Graham, 5 Handbook of Fed. Evid. § 702:3 (7th ed.); *see Person v. Ass'n of the Bar of the City of New York,* 554 F.2d 534 (2d Cir. 1977); *Swafford v. Harris,* 967 S.W. 2d 319 (Tenn. 1988); *Dupree v. Malpractice Research, Inc.,* 445 N.W. 2d 498 (Mich. 1989); *Polo v Gotchel,* 542 A.2d 947 (NJ. 1987). "An agreement to give an opinion on a contingent basis, particularly on an arithmetical scale, attacks the very core of expert testimony." *Gediman v. Sears, Roebuck & Co.,* 484 F.Supp. 1244, 1248 (D. Mass. 1980). Such an agreement is classified by Williston on Contracts, 3d ed. 1972, Section 1716 under "Bargains Obstructing Justice." *See also,* Restatement of the Law, Contracts, 1932 § 552(2).

While acknowledging that Plaintiff is a client of IPP, neither Plaintiff nor DeclarantTobiasever specifies to the court how IPP, and thus the Declarant, were compensated. A brief review of IPP's website reveals that their services are offered "at no cost to content owners." IPP LTD, Monetization, http://www.IPP-intl.com/monetization.html [Attached hereto as Exhibit A and incorporated by reference herein as if set forth verbatim herein]; *also* Press Release,  IPP LTD, New Anti-Piracy Solutions and Business Intelligence Services Launched by IPP LTD (IPP) (Jan. 11, 2012), http://www.prweb.com/releases/2012/1/prweb9087878.htm ("available at no cost to content owners") [Attached hereto as Exhibit B and incorporated by reference herein as if set forth verbatim herein]. The only reasonable explanation for this "no cost" service is that  IPP is being compensated from a percentage of the settlements and/or judgments resulting from this

litigation.

The opacity of how Plaintiff and Declarant treat this issue is particularly alarming. As one court noted: "[t]he concealment of a contingent financial arrangement with a witness would be unconscionable. With the disclosure of such an arrangement, an opinion proffered by an expert would likely be so undermined as to be deprived of any substantial value." *Creative Dimensions in Mgmt., Inc. v. Thomas Group, Inc.,* No. CIV. A. 96-6318, 1999 WL 135155, at *2 (E.D. Pa. Mar. 11, 1999).

Declarant's undisclosed financial interest in this litigation is likely one of the reasons that the Declaration did not address the error rate of the software used to identify Defendants, and erroneously concluded that Defendants, as ISP subscribers, were the individuals involved in copyright infringement activity.

The Declaration would have this Court believe that IPP's highly technical methods used to identify IP addresses from which allegedly infringing activity took place are highly accurate, but recent studies have shown that similar software produces a large number of false positives. A recent study performed by the Department of Computer Science and Engineering at the University of Washington determined that "copyright holders utilize inconclusive methods for identifying infringing BitTorrent users. [The Researchers] were able to generate hundreds of DMCA takedown notices for machines under [their] control at the University of Washington that were not downloading or sharing any content." Michael Piatek et al., *Challenges and Directions for Monitoring P2P File Sharing Networks -or- Why My Printer Received a DMCA Takedown Notice,* 3rd USENDC Workshop on Hot Topics in Security 2008, (July 29, 2008) http://www.usenix.orglevent/hotsec08/tech/fullpapers/piateldpiatek.pdf. Specifically, the article concludes:

e find that it is possible for a malicious user (or buggy software) to implicate (frame) seemingly any network endpoint in the sharing of copyrighted materials. We have applied these techniques to frame networked printers, a wireless (non-NAT) access point, and an innocent desktop computer, all of which have since received DMCA takedown notices but none of which actually participated in any P2P networks.

*Id.*

Also, and as noted above, the Declaration makes no accounting for actions engaged in by third parties using Defendants' networks. As one court noted in a similar case:

Comcast subscriber John Doe 1 could be an innocent parent whose internet access was abused by her minor child, while John Doe 2 might share a computer with a roommate who infringed Plaintiffs' works.... Wholesale litigation of these claims is inappropriate, at least with respect to a vast majority (if not all) Defendants.

*BMG Music v. Does 1-203,* No. Civ. A 04-650, 2004 WL 953888, at *1 (E.D. Pa. Apr. 2, 2004).

The undisclosed nature of IPP's compensation and the likelihood that it is in some way contingent upon this litigation strongly violates public policy and renders the Declaration and other evidentiary support produced by IPP so necessarily flawed that they cannot not assist this Court in determining the facts of this case. Plaintiff is attempting to obtain Defendant's Constitutionally protected information without even being able to create a prima facie record to support its allegations that John Doe, or any of the Defendants, engaged in or contributed to copyright infringement. As such, the Subpoena should be quashed.

## III. CONCLUSION

Plaintiff has demonstrated that it is far more interested in obtaining Defendants' contact information for use in extracting large settlements than the formalities of the legal process and privacy interest of the affected individuals. Plaintiff has repeatedly misled the court in its representations supporting joinder of the Defendants and obtaining early discovery. IPP and the Declarant Mr Fieser undisclosed financial interest in this litigation destroy any credibility of the

Declaration and other factual support produced by Tobias and  IPP. Plaintiff's joinder of

Defendants is improper because Plaintiff's claims do not arise out of the same transaction,

occurrence, or series thereof, and it prejudices the Defendant while undermining judicial

economy. Plaintiff's Subpoena should be quashed because Plaintiff misled this Court in

obtaining an Order granting early discovery, seeks protected information, and violates the

United States Constitution.

WHEREFORE, premises, considered, John Doe respectfully requests that this Court:

(A) Sever and dismiss all Defendants pursuant to Federal Rule of Civil Procedure 21 and
require Plaintiff to bring individual actions against each Defendant, if it chooses to do
so, in the appropriate venue;

(B) Quash the Subpoenas to the ISPs pursuant to Federal Rule of Civil Procedure 26;

(C) Enter a protective order pursuant to Rule 26 of the Federal Rules of Civil Procedure,
staying all discovery in this case (and the use of any information already obtained by the
Plaintiffs in discovery) until such time as the interests of John Does can be heard
anonymously and considered by a court of proper jurisdiction;

(D) Grant such other and further relief to John Does as may justly be entitled.

Dated: 02/24/2012                        Respectfully submitted,

                                         /s/ John Doe
                                         John Doe
                                         Pro se

CERTIFICATE OF SERVICE

**Case 5:12-cv-02086-tjs Document 10 Filed 06/08/12 Page 16 of 20**

This is to certify that a true, correct and complete copy of the foregoing Motion was served as follows:

| | |
|---|---|
| **Via First Class Mail, postage pre-paid**<br>U.S. District Court<br>Eastern District of Pennsylvania<br>650 centerton road<br>Room 230, 2nd Floor New<br>York, NY 10007 | **Via facsimile: (404) 287-4905**<br>Comcast Corporation Legal Demand Center<br>650 Centerton road<br>Moorestown ,Nj 08067<br>**Fax**  Tel: (866-947-587)<br>*Interested/Subpoenaed* |
| **Via First Class Mail, postage pre-paid**<br>Christopher P. Fiore, Esq<br>425 Main Street, suite 320<br>Harleysville Pa 19438<br>Tel: (215) 256-0205<br>*Attorney for Plaintiff* | |
| | |

This 8th day of June 2012.              */s/ John Doe*

                                        John Doe

# EXHIBIT A

about | services | technology | press / news | partners | contact

11

## CREATIVITY

**CURRENTLY PROTECTING 20727 COPYRIGHTS**

sign up for a
free
consultation
*name*

*email* *
*phone*

# MONETIZATION

## how much are you losing to copyright infringement?

It's estimated that digital piracy accounts for almost one quarter of Global Internet traffic.t IPP's premier Monetization service protects and monetizes all types of content including video, audio, images, text, software, and video games across multiple Peer-to-Peer protocols and websites.

## pinpoint digital copyright infringement

Using our proprietary next-generation scanning and cutting edge digital matching technology, our Monetization service provides perpetual global monitoring of your content for copyright infringements across multiple Peer-to-Peer protocols and websites.

m' Peer-to-Peer (P2P) Networks: BitTorrent, eDonkey, Gnutella, Gnutella2, Ares, Kazaa
Websites: Corporate, Commerce, Commercial, Small Business, Ad Supported, News Conglomerates, Entertainment, Lifestyle, and more

Infringements are tracked and authenticated using a strict multi-stage process, involving automated matching and dual-human verification, effectively eliminating all false positives. Every infringing file is then traced to determine the host or Internet Service Provider (ISP). Customizable notices are automatically generated and sent directly to infringing parties or via an ISP. Infringers receive the notification directing them to IPP LTD's branded settlement portal www.copyrightsettlements.com, where they can chose amongst multiple settlement options.

## recoup revenue from digital piracy

Establish a new revenue source while offering infringers multiple settlement options with our Monetization service. Settlement offers are fully customizable and can include opportunities such as hard goods, subscriptions, licensing arrangements, straight settlements or any other offering of your choice. Your options are limitless.

Content owners can choose a soft fan-friendly marketing based approach, a stringent graduated response system, models that include litigation, leveraging IPP's vast intellectual property attorney network or anything in-between.

Our fully customizable Monetization service solution is available at no cost to content owners. Contact us for additional details.

t Price, David. *"Technical Report: An Estimate of Infringing Use of the Internet".*
*IR●.●  I'I    .,         IV ●.    - .●-         ●● Jan 2011.*

### MONETIZATION

### TRACKING

### TAKEDOWN

### BUSINESS INTELLIGENCE

Track your copyrighted content across the leading edge technology, Hite.
[read more]

Our secure, web-based client portal,
4es real-time piracy data and statistics 2 hours a day, every day.
[read more]

62) 2011  IPP Limited. All rights Reserved.